IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DAVID DÍAZ-CASTRO,

**Petitioner,**

**v.**

JORGE MATTA, *et al.*,

**Respondents.**

Civil No. 20-1380 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

Petitioner David Díaz-Castro ("Díaz") is serving a 114-year term of imprisonment for the murder of Martín Pérez-Rodríguez ("Pérez"). (Docket No. 2 at p. 2.) He moved for post-conviction relief pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEPDA"), 28 U.S.C. section 2254 ("section 2254"). (Docket No. 2.) Respondents Jorge Matta and Domingo Emanuelli-Hernández (collectively, "respondents") move to dismiss Díaz's petition for failure to comply with the applicable statute of limitations. (Docket No. 28.)[1] For the reasons set forth below,

---

[1] Jorge Matta and Dennise Longo-Quiñones ("Longo") are named as defendants in the *habeas* petition. (Docket No. 2.) Díaz is a prisoner at the maximum security detention center in Bayamón, Puerto Rico. (Docket No. 6.) Jorge Matta is warden of this facility. Longo served as the Puerto Rico Attorney General from August 2019 to July 2020. Domingo Emanuelli-Hernández ("Emanuelli") is the current Attorney General. The Court substitutes Emanuelli for Longo pursuant to Federal Rule of Civil Procedure 25(d).

the respondents' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.   Background

The facts set forth by Díaz and the respondents are sparse and convoluted.  From what the Court can decipher, the Commonwealth of Puerto Rico charged Díaz with the murder of two individuals. (Docket No. 2.)  Díaz pled not guilty, standing trial in two consecutive criminal proceedings.  Id.

### A.   The First Criminal Case

The Commonwealth of Puerto Rico charged Díaz and his brother, Edwin Díaz-Castro, with murder (hereinafter, the "first criminal case").  (Docket No. 2 at p. 4.)  The jurisdiction, identity of the victim, charge date and case number pertaining to this proceeding are absent from the record.  Sharon Pláceres-Sáenz ("Placeres") and her cousin, Yahaira Soto-Soto ("Soto"), were the only witnesses to testify on behalf of the prosecution.  Id.; Docket No. 35 at p. 3.  Díaz was found guilty.  (Docket No. 2 at p. 4.)  He moved for a new trial for a reason not disclosed in the record.  Id.  A Puerto Rico court granted this request.  Id.

Soto "took the stand" at Díaz's second trial in the first criminal case, stating that "her original testimony was false, that Pláceres' testimony was also false, and that it was Pláceres who intimidated her and coerced her to lie against [Díaz]."

(Docket No. 35 at p. 3.) On a date not specified by the parties, Placeres "admitted that she was receiving benefits for testifying against [Díaz], namely, a much reduced sentence for two murders she committed in exchange for her testimony." (Docket No. 35 at p. 3.)

The Puerto Rico Department of Justice ("Department of Justice") moved to dismiss this first crimnal case. (Docket No. 3 at p. 4.) The record does not, however, reveal the grounds for dismissal. The Puerto Rico Court of First Instance granted the motion to dismiss on January 15, 2016. (Docket No. 28 at p. 2; Docket No. 35 at p. 2.)

**B.   The Second Criminal Case**

During the first criminal case, the Commonwealth of Puerto Rico alleged that Díaz murdered Martín Pérez-Rodríguez (hereinafter, the "second criminal case"). (Docket No. 2 at p. 2; Docket No. 35 at p. 3.) The respondents submitted an English translation of the docket sheet. Docket No. 33, Ex. 1; see The People of Puerto Rico v. David Díaz-Castro, Case No. HSCR200300551, Humacao Division. This document indicates that this case commenced on March 28, 2003. (Docket No. 33, Ex. 1 at p. 2; Docket No. 28 at p. 2.)

In his opposition to the respondents' motion to dismiss, Díaz avers that "[t]here were no eyewitnesses to [Pérez's]

killing." (Docket No. 35 at p. 3.) Remarkably, Pláceres testified in the <u>second</u> criminal case. <u>Id.</u> Her testimony "basically consisted of an admission supposedly made by [Díaz]." <u>Id.</u> The record does not disclose whether Díaz cross-examined Pláceres, or whether the testimony she allegedly fabricated during the first criminal case was disclosed or known to defense counsel. Díaz argues, however, that "the prosecution and Department of Justice . . . knew for a fact that their star witness lied under oath and perjured herself." (Docket No. 2 at p. 4.)

Puerto Rico Police Department officer "Romero" also testified. <u>Id.</u> According to Romero, "she had no intervention on [*sic*] the case other than receiving bullet shells at the Police Department because she was the officer on duty to receive evidence at the moment." <u>Id.</u> Unbeknownst to Díaz, Romero prepared an initial investigation report providing that Pérez "was accompanied by someone when he was killed." <u>Id.</u> The respondents acknowledge this "omission," contending that it "would have indicated, at best, that the victim was accompanied at the time of the murder." <u>Id.</u> at p. 2.

Díaz was found guilty of murder in the first degree, conspiracy, and a firearm violation on May 14, 2004. (Docket No. 28 at p. 28 at p. 1; Docket No. 1 at p. 2.) The Court of First Instance sentenced Díaz to 114 years of imprisonment. (Docket

No. 2 at p. 2.)   The respondents note that Díaz challenged this conviction, but do not state the arguments raised in his appeal. (Docket No. 28 at p. 2.)   The Puerto Rico Supreme Court denied Díaz's writ of *certiorari* on February 3, 2009, nearly five years after the date of conviction.   Id.

### 1.   Díaz's Motion for a New Trial Based on the Dismissal of the First Criminal Case

The Court of First Instance dismissed the first criminal case during Díaz's eleventh year of imprisonment for the murder of Martín Pérez-Rodríguez. (Docket No. 28 at p. 2; Docket No. 35 at p. 2.)  Díaz moved for a new trial in the second criminal case on February 27, 2017 pursuant to Puerto Rico Criminal Procedure Rule 192.1 ("Rule 192.1"), one year and 45 days after the dismissal of the first criminal case.  (Docket No. 2 at p. 4; Docket No. 28.)[2]  Díaz's Rule 192.1 motion set forth two arguments.

---

[2] Puerto Rico courts "may in like manner at the request of the defendant grant a new trial if, after the sentence is pronounced, new facts or new evidence are found of a nature tending to establish defendant's innocence."  P.R. Laws Ann. tit. 34, § 192.  Rule 192.1 provides that "[a]ny person who is imprisoned by virtue of a judgment rendered by any Division of the Court of First Instance" may move to vacate, set aside, or correct the judgment if:

    (1) The sentence was imposed in violation of the Constitution of the laws of the Commonwealth of Puerto Rico or of the Constitution and laws of the United States; or

    (2) The court lacked jurisdiction to impose such a sentence; or

    (3) The sentence imposed exceeds the penalty prescribed by law; or

    (4) The sentence is subject to collateral attack for any reason.

Id. § 192.1.

(Docket No. 35 at p. 2.)   First, Díaz maintained that the "government incurred in prosecutorial misconduct by spoliation of the evidence." Id.  Second, "a key witness in [the second criminal proceeding, *i.e.* Pláceres] had committed perjury in the first case." Id.

Because the Court lacks the benefit of a complete record, it cannot review the relevant orders issued by the Puerto Rico courts.   Díaz asserverates, however, that the "State Court reviewed the merits of [his] motion and denied his request for a new trial via Resolution from October 24, 2018, notified on October 31, 2018." Id.  He appealed this decision "up to the Supreme Court of Puerto Rico, which denied [Díaz's] *Certiorari*, and the Mandate (*mandato*) was relayed to the lower courts on January 3, 2020." Id.

### C.   The Federal *Habeas* Petition

Díaz filed a *pro se habeas* petition on August 8, 2020 pursuant to the AEDPA.  (Docket No. 2.)  According to his petition, Díaz is "being held unlawfully" for three reasons.   First, the Department of Justice allegedly withheld officer Romero's initial investigation report. Id. at p. 7.  This evidence "contradicts" the officer's statement regarding her involvement in the appurtenant criminal investigation, and "shows that [Pérez] was not alone" at the time of his death. Id.  Second, the Department

of Justice purportedly elicited testimony from Pláceres "know[ing] for a fact that their star witness lied under oath and perjured herself." Id. at p. 8.  Third, the "court officials, including the prosecution and lawyers, were [allegedly] influenced by the fact that [Díaz] had been convicted of another murder the year before, [and] did not allow [him] to get a fair trial." Id.

The Court issued an order appointing counsel after Díaz requested leave to proceed in forma pauperis. (Docket No. 5.)  The respondents moved to dismiss the habeas petition pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 28.)  Díaz responded.  (Docket No. 35.)

**D.   Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Rule 12(b)(6), defendants may move to dismiss an action for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." Id. at 555.  In doing so, the Court is "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and

to resolve any ambiguities in their favor." <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 17 (1st Cir. 2011).

### E.   The Anti-Terrorism and Effective Death Penalty Act

"Federal *habeas* review of [a] state-court conviction is governed by the AEDPA." <u>Foxworth v. St. Amand</u>, 570 F.3d 414, 424 (1st Cir. 2009); 28 U.S.C. § 2254.  Petitioners invoke the AEDPA to invalidate "the judgment authorizing [their] confinement." <u>Magwood v. Patterson</u>, 561 U.S. 320, 321 (2010) (citation and quotation omitted).  Congress enacted this statute "to further the principles of comity, finality, and federalism." <u>Kholi v. Wall</u>, 582 F.3d 147, 154 (1st Cir. 2009) (quoting <u>Williams v. Taylor</u>, 529 U.S. 420, 436 (2000)).  To be eligible for relief, a petitioner must show that he or she has either exhausted all state court remedies for each claim raised, or that they are excused from exhausting those remedies because of an absence of available or effective state corrective processes.  <u>See</u> 28 U.S.C. § 2254(b)-(c).

The AEDPA sets forth a one-year statute of limitations. <u>Currie v. Matesanz</u>, 281 F.3d 261, 262 (1st Cir. 2002); <u>see</u> 28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of the following four dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

28 U.S.C. § 2244(d)(1); see Jiménez v. Quarterman, 555 U.S. 113, 114 (2009) ("[The AEDPA's] one-year limitation for a state prisoner to file a federal *habeas corpus* petition . . . runs from the latest of four [statutorily] specified dates."). Pursuant to section 2244(d)(2), the time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2); see Duncan v. Walker, 533 U.S. 167, 179 (2001) ("Section 2244(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability to later apply for federal habeas relief while state remedies are being pursued.").

**F.   Discussion**

The dispositive inquiry for purposes of the motion to dismiss is the date of accrual.  Generally, the day that "judgment [becomes] final by the conclusion of direct review" is the operative date.  28 U.S.C. § 2244(d)(1)(A).  The Puerto Rico Supreme Court denied Díaz's writ of *certiorari* in the second criminal case on February 3, 2009.  Id.  Thus, the date of accrual would be February 4, 2010.  Díaz obtained newly discovered evidence, however, after the date his conviction in the second criminal case became final.  Accordingly, the date of accrual is when the "factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).

The *habeas* petition is based on the falsified testimony from the first criminal case and the withholding of officer Romero's initial investigation report.  (Docket No. 2.)

**G.   Statute of Limitations for the Falsified Evidence**

Díaz learned that Pláceres suborned perjured testimony no later than January 15, 2016, when the Court of First Instance dismissed the first criminal case based on falsified evidence.  (Docket No. 28 at p. 2; Docket No. 35 at p. 2.)  Consequently, the statute of limitations for this claim expired on January 15, 2017.  Díaz filed the Rule 192.1 motion on February 27, 2017, after the

AEDPA clock stopped.  (Docket No. 2.)  Had he filed the Rule 192.1 motion within the one-year deadline, the statute of limitations would have been tolled pending adjudication by the Puerto Rico judiciary.  See 28 U.S.C. § 2244(d)(2).

The First Circuit Court of Appeals has held that "Section 2244(d)(2) does not reset the clock on the limitations period." Trapp v. Spencer, 479 F. 3d 53, 58 (1st Cir. 2007).  Díaz cannot extend the AEDPA statute of limitations by filing a Rule 192.1 motion.  See Cobb v. Colan, Case No. 03-017, 2003 U.S. Dist. LEXIS 220055, at *3 (D.N.H. 2003) (denying a federal *habeas* petition because he "did not file a state petition seeking collateral review of his convictions until well after AEDPA's limitations period had already expired").  Towle v. Warden, N.H. State Prison for Men, Case No. 15-117, 2019 U.S. Dist. LEXIS 167976 (D.N.H. 2019) (dismissing an AEDPA petition as untimely because "[s]tate post-conviction proceedings filed after the expiration of the statute of limitations has expired do not reset the limitations clock"); Sorce v. Artuz, 73 F. Supp. 2d 292, 297-98 (E.D.N.Y. 1999) ("To allow a belated state court collateral attack to revive the AEDPA limitations period would defeat the purpose of the AEDPA limit."); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999) ("AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state

collateral challenge is filed because there is no case 'pending' during that interval").

### 1. Díaz is Not Entitled to Equitable Tolling

Díaz requests that the Court toll the statute of limitations. (Docket No. 35 at p. 4.) The Supreme Court has, indeed, recognized that "§ 2244(d) is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). To prevail, Díaz must establish that he "diligently pursued [his] rights, but some extraordinary circumstance, or obstacle, prevented timely filing." Blue v. Medeiros, 913 F. 1, 8 (1st Cir. 2019) (citing Holland, 560 U.S. at 649). Equitable tolling "is the exception rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances." Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001).

Díaz claims that the *habeas* petition was not filed timely because he "is an indigent person sentenced to life in prison with no economic means and no access to an attorney." (Docket No. 35 at p. 4.) Economic hardship and the length of imprisonment, without more, cannot toll the statute of limitations. See Baldayague v. United States, 338 F.3d 145, 152 (2d Cir. 2003) ("[T]he usual problems inherent in being incarcerated do not justify equitable tolling."); Delaney, 264

F.3d at 15 (denying request to toll the statute of limitations because the petitioner "was a *pro se* prisoner" and "ignorant of the law").

### 2.    The Actual Innocence Exception

Díaz posits that the statute of limitations is tolled because he is innocent. (Docket No. 35 at p. 2.) "A credible showing of actual innocence" may toll the statute of limitations. Riva v. Ficco, 803 F.3d 77, 84 (1st Cir. 2015) (quoting McQuiggin v. Perkins, 569 U.S. 383, 392 (2013)). This "gateway" is narrow. Id. Díaz must demonstrate that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Riva, 803 F.3d at 84 (quoting Schulp v. Delo, 513 U.S. 298, 327 (1995); see Bousley v. United States, 523 U.S. 614, 623 (1998) (noting that "'actual innocence' means factual innocence, not mere legal insufficiency"). Claims of actual innocence require "petitioner[s] to support [their] allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id.

The only evidence proffered in support of Díaz's actual innocence claim is the perjured testimony and purported suppression of Brady material (*i.e.* officer Romero's initial

investigation report).  (Docket No. 35.)  Whether the Court of First Instance relied on evidence other than Pláceres' perjured testimony is unknown.  Accordingly, the actual innocence exception to the statute of limitations is inapplicable.  The claim for post-conviction relief arising from falsified testimony is **DISMISSED**.

###    H.    The Statute of Limitations Regarding Officer Romero's Initial Investigation Report

The date of accrual pertaining to the initial investigation report is ambiguous.  Díaz asserts that the report is "Brady evidence" that "could have led to the real perpetrator of the crime for which [he] was convicted." (Docket No. 35 at p. 4.)  He "found out about its existence while reviewing his case file documents against what his sister had received in her case, which was relayed to him shortly before his Motion for a New Trial was Filed in February 2017." Id.  The Court cannot assess whether Díaz diligently pursued this evidence, and whether he filed the motion for a new trial before the statute of limitations expired. The respondents refer exclusively to the date of accrual in relation to Pláceres' perjured testimony.  The record does not disclose the date that Díaz received officer Romero's initial investigation report.  Accordingly, the motion to dismiss is **DENIED** with regard to the discovery of officer Romero's initial investigation report.

## V.  Conclusion

For the reasons set forth above, the respondents' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. (Docket No. 28.) The claim for post-conviction relief arising from falsified testimony is **DISMISSED with prejudice**. The sole AEDPA claim which remains before the Court is the allegation that the Puerto Rico Department of Justice withheld <u>Brady</u> evidence in the second criminal case. **No later than November 24, 2021**, Díaz and the respondents may present evidence of the date when Díaz received officer Romero's initial investigation report, and the report itself.

Partial judgment shall be entered accordingly.

No certification of appealability shall issue because Díaz did not make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(b).

**IT IS SO ORDERED**.

San Juan, Puerto Rico, October 26, 2021.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE