IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DAVID DÍAZ-CASTRO,

    **Petitioner**,

                **v.**

JORGE MATTA, *et al*.,

    **Respondents.**

**Civil No.** 20-1380 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is Petitioner David Díaz-Castro ("Díaz-Castro")'s petition for *habeas corpus* relief, filed pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEPDA"), 28 U.S.C. section 2254 ("section 2254"). (Docket No. 2.) Díaz-Castro seeks relief from his Puerto Rico court conviction and 99-year prison sentence for the murder of Martín Pérez-Rodríguez. Id.; Docket No. 57-6 at p. 19. For the reasons set forth below, Díaz-Castro's section 2254 petition is **DENIED**.

I. **Factual Background**

    a. **1998 Events**[1]

In 1998, Díaz-Castro was living in the Cotto Mabú ward in Humacao, Puerto Rico. (Docket No. 57-7 at p. 4.) At the time, he

---

[1] The facts in the following narrative, and other facts relied on in this Opinion and Order, are drawn from the translated records provided by the Commonwealth government pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. (Docket No. 57.)

was in a relationship with Sharon Pláceres-Sáenz.  Id.  Along with some of his family members (his brothers Edwin Díaz-Castro and Raúl Díaz-Castro, and sister María Judith Díaz-Castro), he became embroiled in a feud with Martín Pérez-Rodríguez, who sold drugs alongside the Díaz-Castros.  Id. at pp. 6-8, 12.  Their feud began when Pérez-Rodríguez stole some jewelry from María del Carmen Quiñones, Díaz-Castro's first wife and Pérez-Rodríguez's niece. Id. at pp. 6-8.  An altercation took place over the jewelry at a cockfighting arena in Barrio Montones, Las Piedras.  Id. at pp. 8-10.  After the Díaz-Castros spotted Pérez-Rodríguez at the arena, Raúl shouted "thief" at him and struck him on the forehead with the handle of a gun.  Id.  In the commotion, the Díaz-Castros were kicked out of the cockfighting arena.  Id.

Pérez-Rodríguez reported the incident to the police, after which Díaz-Castro and his brother Raúl received a summons from officer Juan José Colón-Báez.  Id. at pp. 10-11.  In response, Díaz-Castro threatened to kill both the officer and Pérez-Rodríguez.  Id. at p. 11; Docket No. 57-8 at pp. 11-12.  According to Ms. Pláceres-Sáenz, he then went on several outings with his siblings to find and kill Pérez-Rodríguez.  (Docket No. 57-7 at pp. 11-12.)  Ms. Pláceres-Sáenz testified that on July 19, 1998, Díaz-Castro had told her that they had killed Pérez-Rodríguez. Id. at pp. 23-24.  The next day, Ms. Pláceres-Sáenz and Díaz-

Civil No. 20-1380 (FAB)                                                  3

Castro went together to a hill to bury the gun allegedly used in the murder. Id. at pp. 25-26.

The government's case at trial included testimony from police officers Luz Romero and Francisco Ruiz. (Docket No. 57-1 at p. 3.) Officer Luz Romero had met Pérez-Rodríguez the month before he was killed and helped cover the murder investigation; officer Ruiz investigated the crime scene. (Docket Nos. 57-1 at p. 7; 57-8 at pp. 4-5.) Officer Romero testified that, following the incident in Montones, Pérez-Rodríguez visited the police station and informed her that the Díaz-Castros were plotting to kill him.[2] Id. at pp. 7-8. After Pérez-Rodríguez was killed, officer Romero prepared a supplementary report including observations from officer Ruiz. See Docket Nos. 44-1; 57-8 at pp. 4-6. According to the report, Pérez-Rodríguez died of gunshot wounds in his back, upper arm, and chest. (Docket No. 44-1 at p. 1.) The report also noted that "[t]here was one person at the scene of the who [sic] was interacting with the deceased and has not yet been located." Id. at p. 3. While officer Romero testified about the prior station visit by Pérez-Rodriguez and the fact that he died of gunshot wounds, the report itself was apparently not discussed in

---

[2] Díaz-Castro's trial attorney apparently did not object to this testimony on hearsay grounds.

Civil No. 20-1380 (FAB)                                                    4

either officer's testimony, nor was the evidence that another person was at the scene with Pérez-Rodríguez.

Following the trial, Díaz-Castro was found guilty of murdering Pérez-Rodríguez.  He was sentenced to 99 years for first-degree murder and an additional fifteen consecutive years for firearms charges.  (Docket No. 57-6 at pp. 19-21.)

### b. State-Level New Trial Proceedings

In 2017, Díaz-Castro sought redress from the Puerto Rico courts on his sentence from the Pérez-Rodríguez case.  He had been successful in expunging his sentence from another murder case the year before.  Id. at p. 25.  Díaz-Castro's other murder sentence rested on testimony from Yahaira Soto-Soto, Edwin Díaz-Castro's former girlfriend.  (Docket No. 57-9 at p. 2.)  Yahaira Soto-Soto recanted her prior testimony, explaining how Ms. Pláceres-Sáenz had testified falsely against Díaz-Castro and had threatened her to do the same.  (Docket No. 57-6 at p. 33.)  Díaz-Castro petitioned the Court of First Instance for a new trial under Rule 192 of the Puerto Rico Rules of Criminal Procedure, arguing that, since his conviction in the Pérez-Rodríguez case relied on Ms. Pláceres-Sáenz's now-questionable testimony, it should be expunged. (Docket No. 57-1 at pp. 13-14.)  He also argued that the prosecution failed to disclose officer Romero's report, which he claimed contained material which was exculpatory information.

(Docket No. 57-1 at pp. 14-15.)  Díaz-Castro's motion included sworn statements from Yahaira Soto-Soto and Elsie Noracelis Cruz-Nieves, a friend of Ms. Pláceres-Sáenz, who corroborated Yahaira Soto-Soto's account of Ms. Pláceres-Sáenz's false testimony and threats.  See Docket No. 57-6 at pp. 33-34.

After holding a hearing, see Docket No. 57-3, the Puerto Rico Court of First Instance denied Díaz-Castro's request for a new trial.  (Docket No. 57-18.)  The Court first noted that the motion was untimely under the Puerto Rico Rules of Criminal Procedure. Id. at p. 8.  Rule 189 provides that a motion for a new trial must be filed within 30 days from the date on which new facts or new elements of evidence become known.  P.R. Crim. R. 189.  Díaz-Castro's petition for a new trial was based on the January 2016 acquittal, but his motion was not filed until February 2017, over a year later.  Id.  Nor was the Court persuaded that issues with Ms. Pláceres-Sáenz's testimony justified holding a new trial.  The Court considered the motive evidence from Ms. Pláceres-Sáenz duplicative of testimony from officers Colón and Romero, so even if her testimony were discredited, the record still contained similar evidence.  Id. at pp. 6-8.  Alleged discrepancies in Ms. Pláceres-Sáenz's testimony were merely impeaching and could have been presented at trial with greater diligence.  Id.  The Court also dismissed Díaz-Castro's argument with respect to officer

Romero's report.  The Court noted that Díaz-Castro had not shown that officer Romero's report was withheld - while the government claimed to have provided it during discovery, Díaz-Castro's trial attorney apparently lost his case files, so it was not possible to determine whether he received the report.  Id. at p. 10.  The Court also found that the evidence in the report was not material, emphasizing that there was no indication about who was supposedly with Pérez-Rodríguez or whether they were present at the time of his death.  Id. at pp. 9-12.

Díaz-Castro appealed the Court of First Instance's decision to the Puerto Rico Court of Appeals.  (Docket No. 57-4).  The Court of Appeals affirmed the findings that Díaz-Castro's motion was not timely, that Ms. Pláceres-Sáenz's discredited testimony was cumulative, and that officer Romero's report was immaterial.  (Docket No. 57-11 at pp. 9-10.)  Díaz-Castro's subsequent petitions for certiorari from the Supreme Court of Puerto Rico were each denied.  (Docket Nos. 57-15; 57-16; 57-17.)

### c. 2254 *Habeas Corpus* Petition

Díaz-Castro filed a *pro se* section 2254 petition on August 4, 2020.  (Docket No. 2.)  This Court granted Díaz-Castro's motion to proceed *in forma pauperis*.  (Docket No. 9.)  On June 7, 2021, the government moved to dismiss the *habeas corpus* petition, arguing that it was time-barred by the one-year statute of limitations set

Civil No. 20-1380 (FAB)                                                7

in 28 U.S.C. Section 2244(d)(1)(D).  (Docket No. 28.)  On October 26, 2024, this Court ruled on the government's motion to dismiss, granting it in part and denying it in part.  (Docket No. 36.)  While Díaz-Castro's arguments based on Ms. Pláceres-Sáenz's falsified evidence were time-barred, his argument based on the allegedly withheld Romero report was not.  Id.

The government subsequently responded to Díaz-Castro's petition.  (Docket No. 54.)  Both parties also filed supplemental briefs in support of their positions.  (Docket Nos. 62; 65.)

**II. Legal Background**

Federal *habeas corpus* review of a state-court conviction is governed by the Anti-Terrorism and Effective Death Penalty Act.  Foxworth v. St. Amand, 570 F.3d 414, 424 (1st Cir. 2009); 28 U.S.C. § 2254.  Petitioners invoke the AEDPA to invalidate "the judgment authorizing [their] confinement."  Magwood v. Patterson, 561 U.S. 320, 321 (2010) (citation and quotation omitted).  Congress enacted this statute "to further the principles of comity, finality, and federalism."  Kholi v. Wall, 582 F.3d 147, 154 (1st Cir. 2009) (quoting Williams v. Taylor, 529 U.S. 420, 436 (2000)).  Courts "shall entertain an application for a writ of *habeas corpus* . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A state court conviction will survive *habeas corpus* review unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d). "[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion, a federal *habeas* court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." Porter v. Coyne-Fague, 35 F.4th 68, 75 (1st Cir. 2022) (quoting Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018)).

The seminal case of Brady v. Maryland, 373 U.S. 83 (1963), established that a criminal defendant has the right, under the Fourteenth Amendment's due process clause, to the disclosure of favorable exculpatory or impeaching evidence by the prosecution. When a state prosecutor fails to deliver Brady evidence to the defendant, and the defendant is subsequently convicted and imprisoned, he or she may seek *habeas corpus* relief based on the Brady violation. See, e.g., Serrano v. Medeiros, No. 16-11808-NMG, 2018 U.S. Dist. LEXIS 78778, at *7-11 (D. Mass. 2018) (granting petitioner's section 2254 *habeas corpus* motion with

Civil No. 20-1380 (FAB)                                                9

respect to his Brady claim).  "To establish a Brady violation, a *habeas* petitioner must demonstrate: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government suppressed the evidence; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment)."  Conley v. United States, 415 F.3d 183, 188 (1st Cir. 2005) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).  "The petitioner carries the burden of proof."  Ferreira v. Alves, No. 22-cv-1132-ADB, 2024 U.S. Dist. LEXIS 23071, at *15 (D. Mass. Feb. 9, 2024) (citing Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).  Suppression of evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Strickler, 527 U.S. at 280 (citing United States v. Bagley, 473 U.S. 667, 676 (1985)).  "A reasonable probability exists if the Government's evidentiary suppression undermines confidence in the verdict."  Conley, 415 F.3d at 188 (citing Kyles v. Whitley, 514 U.S. 419, 434 (1995)); see also United States v. Sepulveda, 15 F.3d 29, 34 (1st Cir. 1998) ("This somewhat Delphic 'undermine confidence' formula suggests that reversal might be warranted in some cases even if there is less than an even chance that the evidence would produce an acquittal.").  Consequently, "there is no Brady violation compelling a new trial when the

belatedly supplied evidence is merely cumulative or impeaching on a collateral issue." United States v. Martínez-Mercado, 919 F.3d 91, 105 (1st Cir. 2019) (Kayatta, J.).

### III. Discussion

To support his *habeas corpus* petition, Díaz-Castro argues that the prosecution in his trial violated Brady v. Maryland by failing to provide officer Romero's report. As an initial matter, Díaz-Castro must establish that officer Romero's report was actually withheld, a fact that the government disputes. Díaz-Castro's current attorney, Gabriel Avilés-Aponte, attests that the report was not received by his office until late 2016, when it was provided by Díaz-Castro's sister, María Judith. See Docket No. 39-1. Díaz-Castro also notes that the report was never discussed or even mentioned at trial, despite officer Romero's testimony on the same subject matter. See Docket No. 62 at p. 2. The government, for its part, asserts that the report was sent, and as evidence, points to a certificate filed in the Puerto Rico court proceedings showing that it was delivered to María Judith's attorneys in connection with her criminal case. See Docket No. 65 at p. 8.

The Court finds that Díaz-Castro has met his burden of showing the report was withheld. While the Court is not convinced that attorney Avilés-Aponte's certificate proves Díaz-Castro's trial

attorneys never received the report,[3] the government's proffer of the certificate of delivery to María Judith is unconvincing of the opposite.  The record shows that María Judith was tried in a separate proceeding and was represented by different counsel.  See Docket No. 57-18 at p. 10.  The record is also unclear as to when María Judith received the report – it could have been received after defendant David's trial.  The government's failure to produce a similar certificate of delivery to defendant suggests that the report was never delivered to him.  And the fact that the report was apparently never mentioned at trial by defendant's attorneys, despite extensive testimony on the same subject matter by the report's author, strongly suggests that it was never delivered.  The Court thus finds that Díaz-Castro has met his burden on this point.

The Court also finds, however, that the evidence in the Romero report is not material, nor indeed is it even clearly exculpatory for Díaz-Castro.  Most of the content in officer Romero's report is cumulative of other evidence heard at trial.  Officer Romero testified about Pérez-Rodríguez's visit to the police station the month before he was killed, the description of which constitutes most of her report.  See Docket Nos. 44-1; 57-8 at pp. 7-16.  The

---

[3] Neither Avilés-Aponte personally, nor his law office, represented Díaz-Castro at trial.  See Docket No. 57-18 at p. 10.

one piece of evidence that is not cumulative is the suggestion that Pérez-Rodríguez was accompanied at the scene of the murder. See Docket No. 44-1 at p. 3 ("There was one person at the scene of the who [*sic*] was interacting with the deceased and has not yet been located."). While not cumulative, however, it is also not materially exculpatory. The report is not clear about whether that "one person" was present when Pérez-Rodríguez was murdered, or present when his body was discovered. While Díaz-Castro argues the person in the report could have been the murderer, or perhaps an exculpatory witness, the report provides no identifying characteristics; it may have been Díaz-Castro himself. Whether the unknown individual could have provided exculpatory or impeachment evidence for Díaz-Castro had his attorney possessed the report, sought out his or her identity, and questioned him or her about his or her observations on the night of the murder is extremely speculative given that there is no information on who the person was or exactly when he or she was at the scene. And in any case, the officers responsible for recording this observation, Romero and Ruiz, both testified at trial and were subject to cross-examination. See Docket No. 57-1 at p. 3. Basic questioning about the crime scene investigation could have raised this detail. While having the report may have helped direct the cross-examination, on the whole, the potential prejudicial effect from withholding the

Civil No. 20-1380 (FAB)                                                    13

report is not sufficiently substantial to cast doubt on the trial verdict.  Therefore, there is no <u>Brady</u> violation supporting Díaz-Castro's *habeas corpus* petition.

**IV. Conclusion**

For the reasons set forth above, David Díaz-Castro's petition for *habeas corpus* relief is **DENIED**.  (Docket No. 2.)  Judgment shall be entered accordingly.

Díaz-Castro fails to make a substantial showing of the denial of a constitutional right as to any claim as required by 28 U.S.C. Section 2253(c)(2).  Accordingly, pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court finds that this case is not appropriate for the issuance of a certificate of appealability.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 21, 2025.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE